(55 Misc. Rep. 276)

### REIS v. DRUG & CHEMICAL CLUB.

(Supreme Court, Appellate Term.   June 27, 1907.)

1. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.

That one conducted a restaurant in the rooms of a club did not clothe him with authority, real or apparent, to charge the club with his debts.

2. SAME.

One contracted to serve a club as "steward," and agreed to personally conduct a restaurant at his cost and without any liability on the club's part. A bookkeeper was employed at their joint expense, and provisions were delivered to the steward's employé, and orders therefor were received from the steward and the bookkeeper. Plaintiff's assignor sent monthly statements addressed to the club, which were received by the bookkeeper, who delivered them to the steward, who made payment in his personal checks. Held that, at most, the steward was the club's special agent, that as such the club could show the exact limit of his authority, and, plaintiff's debt being outside the steward's authority, the club was not liable therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 248, 278–280.]

Appeal from City Court of New York.

Action by Eugene Reis against the Drug & Chemical Club, formerly known as the Drug Trade Club. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and PLATZEK, JJ.

Hitchings & Palliser, for appellant.

Henry A. Vieu, for respondent.

SEABURY, J.  The complaint alleges that between October 31, 1902, and February 1, 1903, the plaintiff's assignor, "at the special instance and request of said defendant, sold and delivered to said defendant goods, wares, and merchandise worth the sum of two hundred and thirteen and $^{50}/_{100}$ dollars." The evidence adduced upon the trial showed that the defendant maintained clubrooms at No. 100 William street, in the city of New York, and that, under a written contract with the defendant one George Keifer conducted a restaurant at that place. Under the contract between the defendant and Keifer, the latter agreed to serve the defendant as "steward," and as such steward agreed that he would "personally conduct the restaurant or dining room of the said club in a first-class manner, and at his cost and expense, and without any liability on the part of the said club therefor, he will furnish all such food, eatables, liquors, and cigars as may be required by the members of the said club." Keifer also agreed to employ at his own expense all the employés necessary under the provisions of the contract, except "the bookkeepers which the said club or its committee may deem necessary to employ, but the expense of the employment of one such bookkeeper the said George Keifer hereby agrees to pay a one-half part." Under this latter provision one Rice was employed; one-half of his compensation being paid by the defendant, and one-half by Keifer. The plaintiff's assignor delivered meat to an employé of Keifer, and received orders for meat to be delivered from

Keifer and from Rice, and sent monthly statements addressed to the Drug Trade Club, which were received by Rice, who delivered them to Keifer. In payment for all the meat delivered, except that for which a recovery is sought in this action, the plaintiff's assignor received the personal checks of Keifer. The plaintiff's assignor testified as follows:

"I went right ahead blindly, sending goods and getting Mr. Keifer's check, and making no inquiry, on the supposition that I could hold the corporation. I never inquired who Mr. Rice was, or what his position was. I never knew from anybody but Mr. Keifer or Mr. Rice what his position was."

He also testified as follows:

"My only authority for holding the Drug Trade Club is an interview with Mr. Keifer and an interview with Mr. Rice. I never inquired if the Drug Trade Club had any contract with Mr. Keifer. I knew there was a restaurant there. I never inquired from any officer of the club, of any kind, nature, or description, whether the Drug Trade Club was carrying on a restaurant business."

When Keifer did not pay for the meat delivered, the value of which the plaintiff now seeks to recover, the plaintiff's assignor wrote Keifer personally demanding payment. The defendant paid Keifer all that it owed him under its contract. At the close of the case the defendant moved to dismiss the complaint and for a direction of a verdict in its favor. Both of these motions were denied, and the defendant duly excepted. The learned trial justice submitted the case to the jury upon the theory that it was for them to determine whether Keifer acted under the apparent authority of the defendant. The jury returned a verdict in favor of the plaintiff. The facts of the case were practically undisputed and are substantially recited above. Before considering further the specific questions involved upon this appeal, it will be well to bear in mind certain elementary and fundamental principles of the law of agency. These principles are well expressed in Edwards v. Dooley, 120 N. Y. 540, 551, 24 N. E. 827, where the court, speaking through Judge Brown, said:

"While a principal is bound by his agent's acts, when he justifies a party dealing with his agent in believing that he has given to the agent authority to do those acts, he is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused only by the agent; that is, he is bound equally by the authority he actually gives, and by that which, by his acts, he appears to give. For the appearance of authority he is responsible only so far as he has caused that appearance. For the appearance of the act the agent alone is responsible. The fundamental proposition is that one man can be bound only by the authorized acts of another. He cannot be charged because another holds a commission from him and falsely asserts that his acts are within it."

Applying these principles to the facts of the case now before us, we think this judgment should be reversed. Nestor v. Craig, 69 Hun, 543, 23 N. Y. Supp. 948; Sexsmith v. Siegel-Cooper Co. (Sup.) 88 N. Y. Supp. 925. The fact that Keifer conducted a restaurant in the rooms of the club did not clothe him with authority, real or apparent, with which to charge the defendant with his debts. Under the most favorable aspect of the case, from the plaintiff's standpoint, Keifer was a special and not a general agent of the defendant. As such special agent it was competent for the defendant to show the exact

limit of his authority, and, the debt contracted by Keifer with the plaintiff's assignor being clearly outside of the limit of his authority as a special agent, the defendant is not liable for it. Martin v. Farnsworth, 49 N. Y. 555.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.